Filed 1/28/26  P. v. Sanchez-McCormick CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>NICHOLAS LINLEY SANCHEZ-McCORMICK,<br><br>  Defendant and Appellant. | G064074<br><br>(Super. Ct. No. 18WF0408)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Caelle Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Pinpoint jury instructions "'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case.'" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.) Generally, a trial court is required to grant a defendant's request for a pinpoint instruction. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 220.) However, a court may "refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence." (*People v. Moon* (2005) 37 Cal.4th 1, 30.)

Defendant Nicholas Linley Sanchez-McCormick (Sanchez) drove a car while under the influence of alcohol, which resulted in a fatal collision. Following a trial, a jury found Sanchez guilty of second degree implied malice murder, related DUI offenses, and enhancements. The trial court imposed an aggregate prison sentence of 17 years to life.

Sanchez contends the court erred in denying his requests for two pinpoint instructions regarding implied malice. We disagree.

The trial court denied Sanchez's requests because the court found the proposed pinpoint instructions were duplicative of the pattern jury instruction on implied malice. (See CALCRIM No. 520.) We find no abuse of the court's discretion. Thus, we affirm the judgment.


I.

FACTS AND PROCEDURAL BACKGROUND

On April 16, 2017, at about 12:40 a.m., Sanchez was driving a white Chevy Malibu heading westbound on Katella Avenue. Alexis B. was in the front passenger seat. The posted speed limit was 45 miles per hour. As Sanchez approached an intersection at Valley View Street, there was a vehicle several car lengths in front of Sanchez's car that had slowed down

and stopped at a red light. Sanchez activated his left turn signal, but then changed lanes to the right. Sanchez then drove into the intersection against the red light at 50 miles per hour without applying the brakes.

At that same time, Aaron O. was driving a gold Ford Fusion heading northbound on Valley View. Aaron's wife was in the front passenger seat, and his teenage son was in the backseat. Aaron was driving at 42 miles per hour. As Aaron approached the intersection at Katella he had the green light. Aaron saw Sanchez's white Chevy Malibu coming from his right side into the intersection, but he did not have time to avoid colliding with Sanchez's car. The force of the collision caused both vehicles to spin counterclockwise, and to enter the southbound lanes of Valley View.

At this time, a third vehicle was driving southbound on Valley View and struck Sanchez's car at 47 miles per hour, causing significant damage to the passenger side of the car. First responders arrived and could hear Sanchez within the white Chevy Malibu talking to Alexis and telling her: "'Wake up, baby. Wake up.'" First responders determined that Alexis initially had a pulse, but she was declared dead at the scene. The cause of death was blunt force trauma. Aaron and his wife sustained various serious injuries. Sanchez was also injured and transported to a hospital.

*Police Investigation*

At the hospital, Sanchez claimed the light was green when they entered the intersection, and they were driving at about 30 miles per hour. [1] An officer conducted a horizontal gaze nystagmus test, and observed that Sanchez had bloodshot, watery eyes, slurred speech and smelled of alcohol.

---

[1] Sanchez uses the personal pronouns they, their, and them.

Sanchez denied drinking any alcohol prior to the collision. Sanchez said that they only slept four hours the night before. Sanchez also admitted driving without glasses, which they usually wore.

Sanchez's blood was drawn, which revealed their blood-alcohol concentration (BAC) at the time of the collision was between 0.185 and 0.20 percent. Sanchez acknowledged having participated in an "Every 15 Minutes" law enforcement program while in middle school, which warns of the dangers of drunk driving (Sanchez was 22 years old on the date of the collision).

*Sanchez's Relevant Past*

In May 2014, an officer issued a citation to Sanchez for driving 58 miles per hour in a 45 mile per hour zone. In December 2015, an officer issued a citation to Sanchez for driving 80 miles per hour in a 65 mile per hour zone. In June 2015, Sanchez was a passenger and witnessed Alexis's DUI arrest. In December 2016, an officer witnessed Sanchez drive through a stop sign at about 50 miles per hour while exiting a parking lot, causing another car to brake suddenly. Sanchez then continued to drive at high speeds between 50 and 60 miles per hour. The officer detained and arrested Sanchez for numerous traffic violations.

In January 2017, an officer arrested Sanchez for DUI. Sanchez denied drinking alcohol, performed poorly on field sobriety tests, and had a 0.13 percent BAC. As part of the DUI arrest, the officer testified that he gave Sanchez a "modified *Watson* admonishment."[2] The officer told Sanchez "that

---

[2] A homicide caused by a drunk driver may be prosecuted as second degree murder on a theory of implied malice. (*People v. Watson* (1981) 30 Cal.3d 290, 297 (*Watson*), overruled on a different point as stated in *People v. Sanchez* (2001) 24 Cal.4th 983, 999.)

you are now being arrested for driving under the influence of an alcoholic beverage or drugs or a combination of both, and should you drive again under the influence and cause a collision that results in the death of another, you could be prosecuted for murder or vehicular manslaughter."

Following the DUI arrest, Sanchez enrolled in a substance abuse and alcohol program. The program emphasized the dangers of drinking and driving. Sanchez attended three classes, with one of the classes occurring only 13 hours before the fatal collision.

*Court Proceedings*

The People filed an information charging Sanchez with murder, driving under the influence of alcohol causing injury, and driving with a BAC of .08 percent or greater causing injury. The People alleged Sanchez had a BAC of .15 percent or greater. The People also alleged an out on bail enhancement, and a multiple victim enhancement.

At a jury trial, after the People rested their case, Sanchez called a psychologist to testify about adolescent development. The psychologist said adolescence "can start as young as age 10 to as old as age 25." The psychologist testified that due to ongoing brain development, adolescents tend to be more impulsive and engage in more risk-taking behaviors.

Prior to closing arguments, there was a discussion among the attorneys and the court regarding jury instructions (the proceedings and rulings will be covered in detail in the discussion section of this opinion).

The jury found defendant guilty of the charged crimes and allegations. The trial court imposed a determinate prison term of two years in state prison, followed by an indeterminate term of 15 years to life.

II.

DISCUSSION

Sanchez contends the trial court erred in denying the defense requests for two pinpoint instructions regarding implied malice. We disagree.

In this discussion we will: A) review relevant principles of law; B) summarize the trial court proceedings; and C) apply the facts to the law.

*A. Relevant Principles of Law*

Pinpoint instructions "'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case.'" (*People v. Gutierrez, supra,* 45 Cal.4th at p. 824.) Ordinarily, the requested instruction must be in writing and supported by legal authority. (See *People v. Michaels* (2002) 28 Cal.4th 486, 529 [there is "no duty to so instruct on doctrines of law that have not been established by authority"].)

Generally, a trial court is required to grant a defendant's request for a pinpoint instruction. (*People v. Whisenhunt, supra,* 44 Cal.4th at p. 220.) However, "a trial court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence." (*People v. Moon, supra,* 37 Cal.4th at p. 30; *Red Mountain, LLC. v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 359 ["'Instructions should state rules of law in general terms'"].)

The de novo standard of review applies to a trial court's refusal to give a requested pinpoint instruction on the basis it was incorrect statement of law or unsupported by substantial evidence. (See *People v. Manriquez* (2005) 37 Cal.4th 547, 581; *People v. Posey* (2004) 32 Cal.4th 193, 218.)

The abuse of discretion standard of review applies to a trial

court's refusal to give a requested pinpoint instruction on the basis it was duplicative, confusing, or argumentative. (See *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 497 ["the trial court did not abuse its discretion by denying the requested instruction as duplicative"]; *People v. Gonzales* (2012) 54 Cal.4th 1234, 1297–1298; *People v. Kraft* (2000) 23 Cal.4th 978, 1063.)

"The California jury instructions approved by the Judicial Council are the official instructions for use in the state of California. The goal . . . is to improve the quality of jury decision making by providing standardized instructions that accurately state the law in a way that is understandable to the average juror." (Cal. Rules of Court, rule 2.1050(a).)

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (Pen. Code, § 187, subd. (a).)[3] "For purposes of Section 187, malice may be express or implied." (§ 188 (a).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188 (a)(1).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188 (a)(2).)

"'Implied malice has "'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life."'"'" (*People v. Clements* (2022) 75 Cal.App.5th 276, 290.) "'""The mental component is the requirement that the defendant 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.'"'"'" (*Ibid.*; *People v. Moore* (2010) 187 Cal.App.4th 937, 941 ["The facts must demonstrate the defendant had a

---

[3] Further undesignated statutory references are to the Penal Code. We shall also generally omit the word "subdivision" or its abbreviation.

subjective awareness of the risk"].)

"Under *Watson*, implied malice can be inferred, in an appropriate case, when the defendant unintentionally killed someone while driving while intoxicated. (*Watson, supra,* 30 Cal.3d at pp. 300–301.) "'One who willfully consumes alcoholic beverages to the point of intoxication, knowing that he thereafter must operate a motor vehicle, thereby combining sharply impaired physical and mental faculties with a vehicle capable of great force and speed, reasonably may be held to exhibit a conscious disregard of the safety of others.'" [Citation.] However, driving while intoxicated, standing alone, is not sufficient to prove implied malice. '[A] finding of implied malice [requires evidence] that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard.'" (*People v. Carr* (2023) 90 Cal.App.5th 136, 143 (*Carr*).)

*B. Trial Court Proceedings*

At the conclusion of the evidence, there was a discussion outside of the presence of the jury regarding jury instructions. The parties each stated that they had no objections to the trial court's proposed packet of instructions. The court's jury instructions included the following pattern instructions on reasonable doubt and consciousness of guilt:

"A defendant . . . is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt . . . ." (CALCRIM No. 103.) "If the defendant made a false or misleading statement before this trial relating to the charged crime knowing the statement was false or intending to mislead, that conduct may show they were aware of their guilt of the crime, and you may consider it in determining their guilt." (CALCRIM No. 362.)

8

The trial court's instructions further included the following modified official pattern instruction on second degree murder:

"The defendant is charged in Count 1 with murder in violation of Penal Code section 187. To prove that the defendant is guilty of this crime the People must prove that, one, the defendant committed an act that caused the death of another person. And two, when the defendant acted or failed to act, they had a state of mind called malice aforethought.

"There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. The defendant had express malice if they unlawfully intended to kill.

"The defendant had implied malice if, one, they intentionally committed the act or failed to act. Two, the natural and probable consequences of the act or failure to act were dangerous to human life. Three, at the time they acted or failed to act they knew their act or failure to act was dangerous to human life. And four, they deliberately acted or failed to act with conscious disregard for human life.

"Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time.

"An act or failure to act causes death if the death is the direct, natural, and probable consequence of the act or failure to act and the death would not have happened without the act or failure to act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances

9

established by the evidence.

"There may be more than one cause of death. An act or failure to act causes death only if it is a substantial factor in causing the death. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes the death. If you find the Defendant guilty of murder, it is murder of the second degree." (CALCRIM No. 520.)

After reviewing the court's instructions, the discussion turned to Sanchez's two requested pinpoint instructions (RPI One and RPI Two).

Sanchez had submitted RPI One in writing, but it did not include a legal citation. RPI One stated: "Under second-degree murder statute, 'implied malice' contemplates subjective awareness."

The People objected to RPI One. The deputy district attorney argued that CALCRIM No. 520 was sufficient: "In element three of implied malice it specifically states, 'at the time they acted they knew their act was dangerous to human life.' That is sufficient and has been upheld as such."

The trial court responded: "I completely agree with the D.A. on this. This whole subjective awareness issue is spelled out in 520 prong three of implied malice. It's crystal clear about the knowledge. By no means am I suggesting you can't argue that one-liner. You certainly can and I probably expect you will. [¶] As far as giving a further instruction on it I believe CALCRIM 520 appropriately gives the jury the knowledge requirement that is required for second degree implied malice murder. So I'm going to refuse that instruction. Feel free to argue it."

Sanchez had also submitted RPI Two in writing, and included a legal citation. (See *Carr, supra,* 90 Cal.App.5th 136.) The pinpoint instruction stated: "Driving while intoxicated, standing alone is not sufficient to prove

10

implied malice. Murder resulting from driving while intoxicated requires you find the defendant actually and personally harbored implied malice. Implied malice may be inferred from a defendant's conduct before, during, and after the act but not imputed from the bare fact of drunk driving."

The People objected to RPI Two. After hearing argument from the People and Sanchez's counsel, the trial court stated:

"I understand your argument as to why you want this, but again, 520 is crystal clear as to what the Defendant must have for second degree murder. I'm going to quote. 'The Defendant had implied malice if,' and then it lists one, two, three, and four. And your instruction really is duplicative of the elements. [¶] 'At the time that they acted or failed to act they knew their act or failure to act was dangerous to human life.' In other words, that is the part where you are saying one must personally harbor implied malice. [¶] And then your language about it could be inferred from conduct before, during, or after, I mean, that's an argument. But again, it's the Court's position that 520 has been tried and tested throughout the years and it's a legally sufficient instruction that gives the appropriate notice and the elements to the jury.

"By no means am I saying you can't argue your pinpoint instruction . . . . But again, it's the Court's position that 520 is more than sufficient to cover all the issues that you have in your pinpoint instruction . . . . So it's going to be noted and refused."

C. *Application and Analysis*

The trial court denied Sanchez's two requested pinpoint instructions (RPI One and RPI Two) based on its analysis that they were duplicative of the pattern instruction CALCRIM No. 520. Therefore, this is

11

an issue that we review for an abuse of the court's discretion. (See *People v. Mora and Rangel, supra,* 5 Cal.5th at p. 497 ["the trial court did not abuse its discretion by denying the requested instruction as duplicative"].)

Under the abuse of discretion standard, a trial court's "'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."'" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978.) There is no "'abuse of discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.)

As far as RPI One, we agree with Sanchez that it was a correct statement of the law regarding implied malice murder: "Under the second degree murder statute, 'implied malice' contemplates subjective awareness." As stated by the Supreme Court, "when the conduct in question can be characterized as a wanton disregard for life, and the facts demonstrate a *subjective awareness* of the risk created, malice may be implied." (*Watson, supra,* 30 Cal.3d at p. 298, italics added.)

However, we also agree with the trial court's analysis that the proposed instruction, and particularly the phrase "subjective awareness," was duplicative of what was included in the official pattern jury instruction.

The pattern instruction stated that to find Sanchez guilty of implied malice murder the jury had to find that "at the time [Sanchez] acted or failed to act they *knew* their act or failure to act was dangerous to human life." (See CALCRIM No. 520.) In short, we do not find that the trial court was either arbitrary or capricious when it determined that the phrase "subjective awareness" essentially connotes the same meaning as the word "knowledge." (See *People v. Martinez* (1991) 230 Cal.App.3d 197, 205 ["The

12

Texas mental state of 'knowingly' and the California mental state of 'implied malice' both focus on the subjective awareness, or knowledge, of the defendant"]; see also *People v. Schmitt* (1957) 155 Cal.App.2d 87, 112 ["When a jury is properly instructed as to an applicable legal principle it is unnecessary to restate that principle in another way"].)

As far as RPI Two, we also find that the trial court was not arbitrary or capricious when it determined that the proposed three sentences in RPI Two merely restated the legal principles communicated in CALCRIM No. 520, as well as legal principles in other official pattern instructions.

The first sentence of RPI Two stated: "Driving while intoxicated, standing alone, is not sufficient to prove implied malice."

While this sentence was a correct statement of law, it merely confirmed that implied malice has both a physical component (e.g., driving under the influence) and a mental component (e.g., knowledge that the act is dangerous to human life). The proposed sentence conveyed that neither the physical component nor the mental component was sufficient by itself to prove implied malice. But by instructing the jury on each of the required four elements of implied malice murder through the use of the pattern instruction CALCRIM No. 520, the trial court also necessarily instructed the jury that neither the physical component nor the mental component— "standing alone"—was sufficient to find Sanchez guilty of implied malice murder. (See *People v. Clements, supra,* 75 Cal.App.5th at p. 290.)

The second sentence of RPI Two stated: "Murder resulting from driving while intoxicated requires you find the defendant actually and personally harbored implied malice."

We agree with the trial court that this sentence was duplicative of the third element in CALCRIM No. 520: "At the time that [Sanchez] acted

13

or failed to act they knew their act or failure to act was dangerous to human life." The proposed sentence is also somewhat duplicative of another pattern instruction: "A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt." (CALCRIM No. 103.) That is, the pattern instructions effectively told the jurors that the People were required to prove Sanchez "actually and personally harbored implied malice."

Finally, the third sentence of RPI Two stated: "Implied malice may be inferred from a defendant's conduct before, during, and after the act but not imputed from the bare fact of drunk driving."

Once again, we find the trial court was correct in its analysis that this sentence was duplicative of the official pattern instructions. CALCRIM No. 520 provides that malice aforethought "is a mental state that must be formed *before the act* that causes death is committed." (Italics added.) The court also instructed the jury that "*at the time* [Sanchez] acted or failed to act they knew their act or failure to act was dangerous to human life." (See CALCRIM No. 520, italics added.) Further, another instruction told the jurors that they could consider Sanchez's statements that were made *after they had driven* to show their consciousness of guilt. (See CALCRIM No. 362.)

In other words, the combination of pattern jury instructions used by the trial court effectively told the jurors that they could consider Sanchez's conduct before, during, and after the act of driving under the influence to determine whether Sanchez was guilty of implied malice murder. (See *People v. Burton* (2018) 29 Cal.App.5th 917, 925 ["We must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way, because we presume jurors understand and correlate all of the instructions"].)

14

In sum, we do not find that the trial court abused its discretion in refusing to instruct the jury using Sanchez's proposed pinpoint instructions (RPI One and RPI Two). Thus, we affirm the judgment.

Sanchez argues: "Because the defense pinpoint instructions set forth correct principles of law and were precisely pertinent to the facts of this case, the trial court was *obligated* to give them as requested." (Italics added.) We disagree. Under the circumstances, the trial court was not obligated to instruct the jurors using RPI One and RPI Two.

Sanchez's requested instructions set forth correct principles of law, and they were arguably "pertinent." However, that does not mean—as a matter of law—that the trial court was *obligated* to give Sanchez's requested pinpoint instructions. This is because the court found them duplicative of other jury instructions. (See *People v. Moon, supra,* 37 Cal.4th at p. 30 [a court may "refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing"].)

To conclude, we find that the trial court acted within its discretion when it determined that Sanchez's requested pinpoint instructions (RPI One and RPI Two)—which were ostensibly crafted to further explain the elements of implied malice murder—were duplicative of the court's pattern jury instruction, CALCRIM No. 520, which satisfactorily explained the elements of implied malice murder.

Having found that the trial court's discretionary analysis regarding Sanchez's requested pinpoint jury instructions was not arbitrary and/or capricious, we must affirm the judgment. (See *People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at p. 978 [""An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge""].)

### III.

### DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.